Lois Weinstein, Plaintiff,

against
RAS Property Management LLC, RITA SKLAR, RITA SKLAR, STEVEN MERO, NINETY-FIVE MADISON COMPANY LP, Defendant.


653735/2019

Petitioner:Jeffrey Alan Barr
Law Offices of Jeffrey A. Barr
225 Broadway, Suite 3110
New York NY 10007
212-227-1834
Respondents: Robert Laplaca and Kristen Rossetti
Verrill Dana LLP
50 Main Street, Suite 1000
White Plains NY 10606
203-222-


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 005) 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115
were read on this motion to/for AMEND CAPTION/PLEADINGS.
The critical issue is whether a personal representative of an estate has standing to maintain a derivative lawsuit on behalf of a New York limited partnership that was commenced when the decedent was alive and was a partner. Because the court holds that a personal representative cannot, the motion for substitution must be denied.
Lois Weinstein (deceased) who was a limited partner in Ninety-Five Madison Company LP, a New York limited partnership (the Partnership), petitioned this court derivatively, seeking, among other things, judicial dissolution, the appointment of a receiver, and sale of Ninety-Five Madison's primary asset, a 16-story commercial building located at 95 Madison Avenue, New York, New York. Ms. Weinstein however died on November 25, 2019 (Death Certificate, NYSCEF Doc. No. 104). Following her death, Carol E. Keller and Gail Shields were appointed as preliminary executors of Ms. Weinstein's estate pursuant to a Surrogate's Court Order dated December 31, 2019 and Preliminary Letters Testamentary of even date (see NYSCEF Doc. No. 105). Counsel for Ms. Weinstein's estate now moves, pursuant to CPLR §§ 1015 and 1021, to substitute Ms. Keller and Ms. Shields for Ms. Weinstein as petitioner and to amend the caption accordingly. Inasmuch as Ms. Weinstein's standing to bring this petition was based on her status as a partner in the Partnership, and the estate of Ms. Weinstein does not automatically become a successor partner under the terms of the Partnership Agreement (hereinafter defined), the respondents oppose the motion arguing that the personal representatives lack standing to maintain this derivative action and, therefore, cannot be substituted. The court agrees.
Reference is made to a certain Ninety-Five Madison Partnership Agreement (the Partnership Agreement), dated June 1, 1982. The Partnership Agreement provides that the death of a limited partner is not an event of dissolution requiring a vote of continuation or other such action by the remaining partners (i.e., opposed to the withdrawal, bankruptcy, death or [*2]incompetency of a general partner —see Sections 8.5 and 8.6 of the Partnership Agreement and as is often the case in New York real estate limited partnerships), the personal representative or executor shall have the rights of the interest of the deceased limited partner (i.e., the economic rights), but shall not automatically and without the consent of the other partners become a substitute limited partner. To wit, Section 8.2 of the Partnership Agreement provides that the death of a limited partner "shall not terminate or dissolve the Partnership," and that upon the death of such partner:
 the executor, administrator, guardian, committee, trustee or other legal representative or successor in interest of such Partner shall have the rights of such Partner subject to the provisions of this Agreement. Such successor in interest shall not become a Substitute Partner except upon compliance with the provisions of Sections 8.3 and 8.4 hereof.
(NYSCEF Doc. No. 115, § 8.2[A]-[B] [emphasis added]).
Substitute Partner is defined as "any person who is admitted to the Partnership as a Substitute Partner under the provisions of Section 8.3 hereof" (id., Art. I, p. 5).
Sections 8.3 provides:
8.3Substitute Partner; Admission. No partner shall have any right to substitute an Assignee as a Partner in his place without the prior written permission of the other
Partner. Any purported substitution of an Assignee as a Partner without such consent shall be void ab initio and shall not bind the Partnership. The consent of the Partners to an Assignment under Section 8.1 hereof shall not, in and of itself, constitute permission under this Section 8.3. Any Assignee shall not be admitted as a Substitute Partner unless
(A) the Assignor shall have indicated such intention of substitution in the instrument effecting the Assignment and the Assignee expressly agrees to be bound, to the same extent as the other Partners, by the provisions of this Agreement and any other documents required in connection therewith and to assume the obligations of the Assignor thereunder, (B) the Assignor and the Assignee shall have executed or delivered such other instruments as the General Partner may deem necessary or desirable to effectuate such admission and (C) the Assignee shall have agreed to pay, as the General Partner shall determine, all reasonable expenses and legal fees relating to the Assignment and his admission as a Substitute Partner, including, but not limited to, the cost of any amendment to the Certificate necessary to effect such admission.
(id. [emphasis added]).
In support of their position, the respondents rely on Salter v Columbia Concerts, Inc. (191 Misc 479 [Special Term NY Cnty 1948])[FN1]
and Pappas v 38-40 LLC (2018 WL 1030312 [Sup Ct, NY Cnty Feb 22, 2018], affd 172 AD3d 409 [1st Dept 2019]).
In Salter, the plaintiff, a stockholder, commenced a shareholder derivative action and [*3]then died, leaving a will that bequeathed his capital stock in the corporate defendant to his executor (191 Misc. at 480). The corporate defendants opposed the substitution of the executor and argued that the action could not be continued under the Business Corporation Law (BCL) because the executor lacked standing as she was not a stockholder at the time of the transaction complained of and/or because the stock did not devolve upon her by operation of law (id.). The court in Salter disagreed, holding that when stock is acquired by a personal representative under a will, it passes by operation of law and therefore substitution of a personal representative for the decedent in a stockholder derivative action may be made (id. at 480-81). Putting aside that Salter does not support the respondents' position, inasmuch as Salter involved a corporation, and not a limited partnership, it simply bears no application to the case at nisi prius. As the court held in Salter, upon the death of a shareholder, the estate by operation of law becomes not only the owner of the economic rights of being a shareholder but also a successor shareholder without further action by either the other shareholders or the corporation itself. And, it is beyond cavil that being an owner of stock provides the necessary currency of standing to assert stockholder rights in the corporation. 
Pappas v 38-40 LLC, however, which involved a limited liability company, is more instructive. In Pappas, a personal representative of the estate of a decedent brought an action individually and derivatively on behalf of 38-40 LLC (the LLC) seeking declaratory and injunctive relief for breach of contract, breach of fiduciary duty, waste, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and conversion. The representative filed a motion for a preliminary injunction and for the appointment of a temporary receiver, and the LLC moved to dismiss the complaint. The terms of the LLC agreement in Pappas expressly provided that a upon a member's death, the personal representative of the estate is a successor in interest only and is entitled only to allocations and distributions but does not automatically become a member in the LLC (2018 WL 1030312, * 4). New York State Supreme Court Justice Saliann Scarpulla denied the representative's motion and dismissed the derivative claims holding that the personal representative lacked standing because to pursue a derivative claim, a plaintiff must be a member of the limited liability company at the time of the alleged wrong, at the commencement of the lawsuit, and throughout the litigation (citing MFB Realty LLC v Eichner, 2016 WL 3541398 [Sup Ct, NY Cnty 2016]; Herman v Herman, 122 AD3d 506 [1st Dept 2014]; and Cohen PDC, LLC v Chelock-Bakker Opportunity Fund, LP, 2010 WL 4530242 [Sup Ct, NY Cnty 2010]). Justice Scarpulla also dismissed the direct claims as inextricably intertwined with the derivative claims. The First Department affirmed, reasoning that the plaintiff held an interest only in the decedent's estate, and was not a member in the LLC and therefore lacked standing to pursue the derivative claims on behalf of the LLC, citing Estate of Calderwood v Ace Group Intl. LLC (157 AD3d 190, 194 [1st Dept 2017]). 
In Estate of Calderwood, the estate of Alexander Calderwood, a deceased member of a Delaware limited liability company, brought an action seeking certain declaratory relief including that the estate had stepped into the shoes of Mr. Calderwood and succeeded to all of the rights and privileges of a member under the limited liability company operating agreement, an accounting, the imposition of a constructive trust and for access to the books and records of that limited liability company. The limited liability company moved to dismiss pursuant to CPLR § 3211(a)(7), arguing that pursuant to the express terms of the operating agreement, upon [*4]the occurrence of Mr. Calderwood's death, he became a withdrawing member and he ceased to be a member in the company. In its opposition papers, the estate argued that notwithstanding any limitation set forth in the operating agreement, under Section 18-705 of the Delaware Limited Liability Company Act (the Act) which provides that the personal representative may exercise all of the member's rights, the personal representative succeeded to the rights of being a member. New York State Supreme Court Justice Shirley Werner Kornreich, among other things, dismissed the claim for a declaration that the estate was a member of the limited liability company because conflicts between the Act and an operating agreement are resolved in favor of the operating agreement or to otherwise fill gaps if an in the limited liability company agreement.The First Department affirmed this ruling holding that the terms of the operating agreement governed and pursuant to the terms of the operating agreement, the estate was a successor-in-interest only, with rights to distributions, but was not a member and, thus, not entitled to exercise all of the rights previously possessed by Mr. Calderwood.
Although the case at nisi prius involves a New York limited partnership and not a New York or Delaware limited liability company, the principles underlying the distinction between Salter, on the one hand, and Pappas and Estate of Calderwood, on the other, compel the result. Here, like in Pappas and in Estate of Calderwood, and unlike in Salter, pursuant to the terms of the governing documents of the company, the personal representative succeeds to owning the equity interest in the business without becoming a substitute limited partner in the partnership. It is of no moment that Ms. Keller and Ms. Shields acquired their interest in the partnership by operation of law (cf. Pessin v Chris-Craft Indus., Inc., 181 AD2d 66 [1st Dept 1992] [finding contemporaneous ownership requirement under BCL § 626 satisfied where plaintiff acquired shares by operation of law]). In this respect, this action is not analogous to a corporate stockholder derivative suit where the issue of contemporaneous ownership may be satisfied through, e.g., a will (e.g., Singer v State Laundry, 188 Misc 583, 586 [Special Term, NY Cnty 1947]). Put another way, unlike in a corporation where the estate becomes a stockholder by operation of law, the personal representative in the limited partnership may never become a successor limited partner under the terms of the Partnership Agreement. As such, Ms. Shields and Ms. Keller simply lack standing to maintain this lawsuit and cannot be substituted for Ms. Weinstein.
Accordingly, it is
ORDERED that the motion to substitute is denied, and it is further 
ORDERED that all proceedings in this action are automatically stayed pursuant to CPLR § 1015, by operation of law based on the death of Lois Weinstein, except that it is
ORDERED that to the extent that any party seeks to lift the stay and/or move to dismiss, such motion may be filed in this action. 
$SIG$
DATE 2/5/2020
ANDREW BORROK, J.S.C.



Footnotes

Footnote 1:Respondents raised Salter at the pre-motion conference with the court.